**Thomas G. PARRY # BH– 2648, Appellant,**

v.

**Frederick ROSEMEYER.**

No. 94–3335.

United States Court of Appeals, Third Circuit.

Submitted Under 3rd Cir. LAR 34.1(a) June 5, 1995.

Decided Aug. 21, 1995.

Thomas S. White, Federal Public Defender, W. Penn Hackney, First Asst. Federal Public Defender, Karen Sirianni Gerlach, Asst. Federal Public Defender, Pittsburgh, PA, for appellant, Thomas G. Parry.

Robert E. Colville, Dist. Atty., Kemal Alexander Mericli, Asst. Dist. Atty., Thomas N. Farrell, Asst. Dist. Atty., Office of the Dist. Atty., Pittsburgh, PA, for appellee, Frederick Rosemeyer.

Before: BECKER, NYGAARD, and ALITO, Circuit Judges.

## OPINION OF THE COURT

BECKER, Circuit Judge.

Thomas G. Parry appeals from an order of the district court denying his petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. His appeal presents the question whether a judge's or defense counsel's failure to advise a defendant offering a plea of guilty that, if he or she is sentenced to probation, his or her probation can be revoked if it is violated and a term of imprisonment substituted in its place, renders the plea unknowing and involuntary. We hold that a judge's failure to advise a defendant who is planning to plead guilty about such consequences of revocation of probation does not constitute a violation of due process because these are collateral rather than direct consequences of a guilty plea. We further hold that no violation of the Sixth Amendment right to effective assistance of counsel was made out here because the prejudice prong of *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), has not been satisfied. Accordingly we affirm.

### I. FACTS AND PROCEDURAL HISTORY

An information filed in the Court of Common Pleas of Allegheny County in May 1987 charged Parry with one count of robbery in violation of 18 PA.CONS.STAT.ANN. § 3701(a)(1)(i) or (ii) (first-degree robbery) and one count of criminal conspiracy in violation of 18 PA.CONS.STAT.ANN. § 903(a)(1). Parry was offered, and he accepted, a plea agreement. In exchange for Parry's agreement to plead guilty to a felony of the second

degree on the robbery count, 18 PA.CONS. STAT.ANN. § 3701(a)(1)(iv), and to the count of criminal conspiracy, the district attorney agreed to a sentence of eleven and one-half to twenty-three months imprisonment on the robbery count to be followed by two years of probation on the conspiracy count. Parry could have received up to twenty years imprisonment for these crimes under Pennsylvania's sentencing procedures. *See* 18 PA. CONS.STAT.ANN. §§ 905(a) and 1103(2).[1] The agreement allowed Parry to withdraw his guilty plea for any reason up to the time of sentencing.

At Parry's guilty plea hearing, the judge discussed with him the terms of the plea agreement, including the proposed sentence. Neither the judge nor Parry's attorney specifically discussed with him the possible ramifications of a probation violation. Parry was sentenced by the same judge at a separate hearing on December 21, 1987, in accordance with the negotiated plea. There was no specific discussion at the sentencing hearing about what might happen to Parry if he violated the conditions of his probation.[2]

Parry served his term of imprisonment, but while he was on probation and parole he was arrested for burglary and related crimes. The same judge who earlier had sentenced Parry held a probation violation hearing on February 20, 1991, and, *inter alia*, revoked the term of probation and sentenced him to two to ten years on the conspiracy count.[3]

After unsuccessfully seeking relief in state court in 1991 under the Post Conviction Relief Act, 42 PA.CONS.STAT.ANN. §§ 9541 *et seq.*, and not prevailing in his appeals thereon to the Pennsylvania Superior and Supreme Courts in 1992 and 1993, Parry filed the present habeas petition in the district court for the Western District of Pennsylvania, naming Frederick Rosemeyer, Warden of the State Correctional Institution at Greensburg, Pennsylvania, and the Attorney General of Pennsylvania as respondents. In his petition, Parry raised the same two grounds for relief that were presented in the state courts, namely, that his guilty plea was involuntary and unknowing in violation of his constitutional right to due process because he was not advised that the sentencing court could impose a two to ten year term of imprisonment in place of the two-year term of probation upon violation of the terms of his probation, and that his counsel was ineffective for failing to advise him of the potential consequences of revocation of probation.

The District Attorney of Allegheny County filed an answer to the habeas petition on behalf of the respondents, conceding that the claims were exhausted and addressing the merits of the petition.[4] Thereafter, the magistrate judge filed a Report and Recommendation in which he recommended that the petition be dismissed. Objections were filed, but the district court adopted the Report and Recommendation and dismissed the petition. A timely motion for reconsideration was denied and this timely appeal followed. We

---

1. 18 PA.CONS.STAT.ANN. § 905(a) provides in relevant part that conspiracy is a crime of the same grade and degree as the most serious offense which is an object of the conspiracy. Section 1103(2) provides that a person who has been convicted of a felony of the second degree may be sentenced to imprisonment "for a term which shall be fixed by the court at not more than ten years." 18 PA.CONS.STAT.ANN. § 1103(2). Thus, an individual convicted of second-degree robbery and conspiracy to commit second-degree robbery, if sentenced on both counts and ordered to serve the sentences consecutively, could serve up to 20 years in prison.

2. The judge warned Parry in general terms about staying out of trouble in the future, but we do not consider this general warning to have been directed at the potential consequences of violating the probationary period to which Parry was about to be sentenced.

3. Eventually, following his conviction by a jury, Parry received a sentence of four to eight years imprisonment on the new burglary charges.

4. In their brief on appeal, the respondents alluded to the possibility that the ineffective assistance of counsel claim might not be exhausted after all, because it was abandoned on appeal following denial of the post-conviction petition. We have reviewed the brief filed in the Superior Court on Parry's behalf and the petition for allowance of appeal filed in the Supreme Court, especially including the text of the arguments contained therein, and we find that the ineffective assistance of counsel claim was fairly presented to both courts and is, thus, exhausted. *See Picard v. Connor*, 404 U.S. 270, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971).

granted Parry's request for a certificate of probable cause to appeal and counsel was appointed to represent him in these proceedings. We now affirm.

## II. DUE PROCESS

### A.

Parry submits that, had he known that a violation of the terms of his probation could result in a term of imprisonment of up to ten years on the conspiracy count, he would not have agreed to plead guilty; thus, he says, his guilty plea was unknowing and involuntary in violation of due process. Parry further argues that, because counsel did not advise him that he could receive up to ten years on the conspiracy count to which he pled guilty should he violate his probation, counsel rendered ineffective assistance in violation of the Sixth Amendment. Parry asks this court to grant a writ of habeas corpus or in the alternative to remand for an evidentiary hearing on the voluntariness of his plea.

In the state court post-conviction proceedings, the court found, following a hearing at which Parry and his counsel testified, that Parry's plea was voluntary. Whether a plea of guilty is voluntary is a question of law and not a question of fact subject to the presumption of correctness of 28 U.S.C. § 2254(d). *Marshall v. Lonberger*, 459 U.S. 422, 431, 103 S.Ct. 843, 849, 74 L.Ed.2d 646 (1983). Thus, a federal habeas court's review of the issue of the voluntariness of a guilty plea is plenary.

We note preliminarily that Parry has no other complaint about the process by which his plea was taken. The record shows that he completed and signed a seven-page questionnaire concerning his agreement to waive his right to trial by a jury, and that he answered yes to questions concerning whether his guilty plea was voluntary, whether he understood the maximum term for the offense of conviction, and whether he was satisfied with counsel's representation. His counsel also signed the form, certifying that he had advised Parry of his rights and of the meaning of the questions contained in the form, and that Parry's plea was voluntarily entered into. At the guilty plea hearing, Parry testified that he had gone over the seven-page questionnaire with his attorney and that he had answered the questions truthfully. In addition, he represented that he was satisfied with counsel's representation. Counsel testified that he felt that Parry understood the questionnaire and understood the significance of pleading guilty. Parry's only complaint then is that no one told him that he could be ordered to serve a term of imprisonment in place of a revoked term of probation and that the term of imprisonment could exceed the length of the term of probation.[5]

### B.

To comport with the Fifth Amendment, a defendant's plea of guilty must be voluntary and intelligent. *Boykin v. Alabama*, 395 U.S. 238, 89 S.Ct. 1709, 23

---

5. The judge who accepted the plea and sentenced Parry to probation on the conspiracy count had the authority to impose a sentence up to and including the maximum when Parry violated his probation, because his probationary term was in lieu of a sentence. In Pennsylvania, the consequences of a violation of probation depend on whether the judge has either imposed and then suspended a prison sentence or deferred imposing a sentence in the first instance:

> If a defendant is sentenced, but the judge chooses to suspend sentence pending a period of probation, the trial judge may resentence the defendant if he violates that probation. The maximum period of the re-sentence is limited, however, to the maximum term under which the defendant was originally sentenced....
>
> ... By exercising the statutory option of imposing a period of probation in *lieu* of sen-

tencing, the court defers sentencing a defendant to a fixed term of imprisonment until such time as the defendant has violated the conditions of his probation. In other words, the setting of the term of probation is not a term of sentence, and may not act as a limitation on the court to impose a sentence for a term of years greater than the probationary period, not in excess of the maximum fixed by law for the particular offense.

*Commonwealth v. Cole*, 222 Pa.Super. 229, 294 A.2d 824, 825–26 (1972) (emphasis added) (finding no violation of double jeopardy clause). *See also Commonwealth v. Raynes*, 349 Pa.Super. 314, 503 A.2d 17 (1986), *allocatur denied*, 514 Pa. 635, 522 A.2d 1105 (1987); 42 PA CONS.STAT. ANN. § 9771(b) (upon revocation court possesses same sentencing alternatives as were available at time of initial sentencing).

L.Ed.2d 274 (1969). A plea of guilty will not be found to be unknowing and involuntary in the absence of proof that the defendant was not advised of, or did not understand, the direct consequences of his plea. *Brady v. United States,* 397 U.S. 742, 755, 90 S.Ct. 1463, 1472, 25 L.Ed.2d 747 (1970). A direct consequence is one that has a "definite, immediate, and largely automatic" effect on the range of the defendant's punishment. *Cuthrell v. Director, Patuxent Inst.,* 475 F.2d 1364, 1366 (4th Cir.), *cert. denied,* 414 U.S. 1005, 94 S.Ct. 362, 38 L.Ed.2d 241 (1973). We have held that "[t]he only consequences considered direct are the maximum prison term and fine for the offense charged." *United States v. Salmon,* 944 F.2d 1106, 1130 (1991), *cert. denied,* 502 U.S. 1110, 112 S.Ct. 1213, 117 L.Ed.2d 451 (1992).[6]

■ Due process does not, however, require that a defendant be advised of adverse *collateral* consequences of pleading guilty, even if they are foreseeable. In accordance with this rule, we have previously held that deportation is a collateral consequence of a guilty plea that need not be explained in a Rule 11 proceeding. *See United States v. Romero–Vilca,* 850 F.2d 177, 179 (3d Cir. 1988). Similarly, in *United States v. Salmon,* 944 F.2d 1106 (3d Cir.1991), *cert. denied,* 502 U.S. 1110, 112 S.Ct. 1213, 117 L.Ed.2d 451 (1992), where the defendant contended that his (previous) pleas of guilty to the predicate offenses were involuntary because he was not informed of the (enhanced) effect they might have on sentencing for future offenses under a career offender scheme, we held that the effect of a conviction on sentencing for a later offense is a collateral consequence. *Id.* at 1130. In addition, in *Kincade v. United States,* 559 F.2d 906 (3d Cir.) *(per curiam ),* *cert. denied,* 434 U.S. 970, 98 S.Ct. 519, 54 L.Ed.2d 458 (1977), where the defendant challenged the voluntariness of his federal guilty plea because the starting time of his sentence was delayed due to a subsequent

state court conviction, we held that the effect of old § 3568 of Title 18 of the criminal code (that a federal sentence will run consecutive to rather than concurrently with a state sentence[7]) is not a direct consequence of a guilty plea.

We have also held that loss of one's job as a result of being convicted of a felony, *see United States v. Crowley,* 529 F.2d 1066, 1072 (3d Cir.), *cert. denied,* 425 U.S. 995, 96 S.Ct. 2209, 48 L.Ed.2d 820 (1976), and deprivation of voting rights, *see United States v. Cariola,* 323 F.2d 180, 186 (3d Cir.1963), are collateral consequences the failure to inform of which will not invalidate a plea. In *Cariola,* we explained that imposing a burden of explaining all possible collateral consequences on a trial judge was "out of all proportion to the essentials of fair and just administration of the criminal laws." *Id.*

These precedents strongly support the Commonwealth's contention that the fact that a term of imprisonment potentially greater than the term of probation can be imposed upon revocation of probation need not be discussed with a defendant who is planning to plead guilty. As we explained in *Kincade,* "not all possible variations in time of incarceration amount to direct consequences." 559 F.2d at 909. Clearly, revocation of probation is not an immediate and automatic consequence of pleading guilty. *See Cuthrell,* 475 F.2d at 1366. Like a subsequent state court conviction, *cf. Kincade,* 559 F.2d at 908, revocation of probation may or may not occur sometime in the future, and whether it occurs is dependent on the actions of the defendant. A sentence of imprisonment upon revocation of probation is not generated by the plea but by the defendant's own unwillingness or inability to conform to the restrictions imposed as part of probation. Therefore, a term of imprisonment imposed in place of a revoked term of probation would be a direct consequence of violating a condi-

---

6. Parry was informed that the statutory maximum for conspiracy to commit second-degree robbery is ten years. Parry answered "yes" to the question pertaining to his knowledge of the maximum sentences for *each* count on the seven-page guilty plea questionnaire, and his sentencing colloquy provides no reason to conclude that

he did not in fact know that a conspiracy conviction could result in a ten year sentence.

7. This statute was repealed in 1986 and replaced without substantial change by 18 U.S.C. § 3585. See *Barden v. Keohane,* 921 F.2d 476, 480 (3d Cir.1990).

tion of probation (here, the condition that Parry not be rearrested), but not of pleading guilty.

While this automatic/nonautomatic distinction weighs strongly in favor of holding the re-sentencing in this case to be merely a collateral consequence of Parry's guilty plea, Parry maintains that a sentence of imprisonment upon revocation of probation is not merely a collateral consequence. That is because, although he was told that the maximum penalty that he would receive for his two convictions taken together was twenty-three months in prison and two years on probation, for a total penalty of just under four years, the maximum penalty to which he ultimately was exposed on the two counts became twenty-three months plus ten years, or nearly twelve years, all of it prison time. Thus, Parry submits, his re-sentencing upon revocation of probation was indeed a direct consequence of his guilty plea due to the effect on his maximum term. We disagree. Parry argues backwards from the consequences of his subsequent misconduct without recognizing that it was that misconduct itself which led to his present plight, not the original sentence.

Our position is supported by *Torrey v. Estelle*, 842 F.2d 234 (9th Cir.1988), on which the respondents rely, and the facts of which approximate what happened to Parry. In *Torrey*, the defendant entered a plea of guilty to one count of first-degree murder. Pursuant to a negotiated plea, the court sentenced Torrey, who was nineteen years old, to serve his time in the California Youth Authority rather than a state prison. It was understood that the Youth Authority would retain him in custody until the age of twenty-five. However, after serving two years in the custody of the Youth Authority, Torrey was found not amenable to Youth Authority treatment because he had attempted to purchase a gun through the mail. The sentencing court then imposed a sentence of twenty-five years to life in the state prison.

In his ensuing habeas petition, Torrey argued that his guilty plea was involuntary because he had not been advised of the negative consequences of exclusion from the Youth Authority. The Ninth Circuit found that Torrey's commitment to state prison after the Youth Authority found him not amenable to treatment was a collateral consequence of the plea that did not require prior advice from the court or his counsel. The court reasoned that Torrey's failure to adjust at the Youth Authority was in his own hands and not an automatic consequence of his guilty plea. *Id.* at 236. Similarly, we hold that Parry's re-sentencing following his probation violation was a collateral consequence of his guilty plea.[8]

## C.

In reaching this conclusion, we are aware that a term of special parole has been held to directly affect the maximum possible sentence and that it must be discussed with a defendant prior to acceptance of the plea. *See United States v. Cleary*, 46 F.3d 307, 310 (3d Cir.1995), *cert. denied*, —— U.S. ——, 116 S.Ct. 237, —— L.Ed.2d —— (1995). In 1982, Rule 11 was amended to require federal trial judges to inform the defendant of the maxi-

---

**8.** Parry gets no aid from *Innes v. Dalsheim*, 864 F.2d 974 (2d Cir.1988), *cert. denied*, 493 U.S. 809, 110 S.Ct. 50, 107 L.Ed.2d 19 (1989). Defendant Innes was allowed to remain at liberty pending sentencing after agreeing to plead guilty in exchange for a lenient sentence on four counts of first-degree robbery. While at liberty during the interim between the plea hearing and sentencing, Innes was arrested on three more robbery charges. At the sentencing hearing, the court ruled that Innes had breached the plea agreement by virtue of his new arrests; thus the court was not required to impose the reduced sentence. Instead, it imposed a sentence greater than that which had been negotiated. The court summarily denied Innes's motion to withdraw the plea. On appeal, the Second Circuit held that due process required that Innes be allowed to withdraw his plea because he did not receive the sentence he bargained for and because he was told neither that he would be unable to withdraw his plea nor that his plea would stand regardless of whether he was rearrested. *Innes*, 864 F.2d at 979. But *Innes* is inapposite. Unlike Innes, Parry *did* receive the benefit of his bargain at his sentencing. We agree that had he not, he would have been entitled to withdraw his plea. But Parry bargained for a sentence of probation, and that was the sentence imposed. Parry ultimately received a higher sentence than he was expecting solely because of his *post*-sentencing conduct in violation of the terms of his probation.

mum possible penalty provided by law, *including* the *effect* of any special parole term, before accepting a guilty plea.[9] The Notes of the Advisory Committee on Rules regarding the 1982 amendment recommended that a judge inform a defendant of the following four items involving special parole:

(1) that a special parole term will be added to any prison sentence he [or she] receives;

(2) the minimum length of the special parole term that must be imposed and the absence of a statutory maximum;

(3) that special parole is entirely different from—and in addition to—ordinary parole; and

(4) *that if the special parole is violated, the defendant can be returned to prison for the remainder of his [or her] sentence and the full length of his [or her] special parole term.*

1982 Amendment Advisory Committee Note, FED.R.CRIM.P. 11(c)(1) (emphasis added) (quoting *Moore v. United States*, 592 F.2d 753, 755 (4th Cir.1979)).

The requirement of such advice is the result of a rule of procedure, not constitutional doctrine. But even assuming that the precepts of amended Rule 11 would somehow inform the due process inquiry, that would not help Parry, for there is a fundamental distinction between a special parole term and ordinary parole. "Unlike ordinary parole, . . . special parole *increases* the possible period of confinement. It entails the possibility that a defendant may have to serve his original sentence plus a substantial additional period, without credit for time spent on parole." *Moore*, 592 F.2d at 755 (footnote omitted). That is why the nature and effect of a term of special parole must be explained to, and understood by, a defendant before his or her plea will be considered voluntary and knowing. *See also United States v. Baylin*, 696 F.2d 1030, 1037 n. 18 (3d Cir.1982) ("Rule 11 requires that special parole effects be ex-

plained because they are cumulative to any prison term imposed, and they therefore effectively expand the maximum possible sentence for the offense").

The 1982 amendment to Rule 11 was not intended to change the rule that, with respect to ordinary parole, a defendant need not be advised that if parole is violated, he or she could be returned to prison. 1982 Amendment Advisory Committee Note, FED. R.CRIM.P. 11(c)(1) (quoting *Bunker v. Wise*, 550 F.2d 1155, 1158 (9th Cir.1977)); *see also Sanchez v. United States*, 572 F.2d 210, 211 (9th Cir.1977) (effect of violation of ordinary parole is collateral consequence of pleading guilty). While this court has not yet decided whether a violation of ordinary parole is a collateral consequence of pleading guilty, we previously have alluded to the distinction between probation and ordinary parole on the one hand and special parole on the other. *See Baylin*, 696 F.2d at 1037; *see also Berry v. United States*, 412 F.2d 189, 192 (3d Cir. 1969) ("Under ordinary circumstances, it should not become necessary for a trial court to include an explanation of probation and parole in its inquiry into the defendant's understanding of his plea."). In *Baylin*, we explained that " '[s]pecial parole,' which applies only to drug offenders pursuant to 21 U.S.C. § 841 . . ., is imposed *in addition to* any term of years. It is thus entirely different from early release parole." *Baylin*, 696 F.2d at 1037 n. 18 (emphasis added). *See also Roberts v. United States*, 491 F.2d 1236 (3d Cir.1974) (*per curiam* ).[10]

We believe that, in terms of the effect on a defendant's sentence, probation is more analogous to ordinary parole than to a special parole term. That probation and ordinary parole have much in common as a general matter cannot be seriously doubted. It is true that in Pennsylvania, an order of probation is one of the sentencing alternatives available to a judge, 42 PA.CONS.STAT.ANN. §§ 9721–22, while parole is an administrative

---

**9.** In 1989, the rule was amended to include supervised release.

**10.** In *Roberts*, we distinguished ordinary parole from a special parole term, explaining that ordinary parole means a conditional release from incarceration under supervision at a time prior

to the expiration of the full prison term set by the sentencing court. In contrast, a special parole term is used in addition to, and not in lieu of, normal sentencing and parole procedures. *Id.* at 1238.

procedure, not a judicial one—it does not affect the sentence, *see* 61 Pa.Stat.Ann. § 331.1; *Rivenbark v. Board of Probation and Parole*, 509 Pa. 248, 501 A.2d 1110, 1113 (1985). Nevertheless, the similarities between the two are greater than the differences.[11]

Unlike a term of special parole, a term of probation is imposed in lieu of, rather than in addition to, a normal sentence. It does not effectively expand the maximum possible sentence for the offense. Parry was not given a term of probation in addition to a sentence on the conspiracy count; he was given a term of probation *instead of* a sentence. He knew the length of the maximum possible term of imprisonment on that count. Therefore, the sentencing judge was not constitutionally required to explain in detail the potential effects of probation, including that if it is violated, a prison sentence for a term of years greater than the probationary period, up to and including the maximum under the statute (which, we reiterate, Parry knew), can be imposed.

### D.

While provision of information concerning a collateral consequence like revocation of probation might be useful to defendants and our opinion today should not be read as discouraging sentencing judges from providing such information, we do not think that the result we reach in this case is a harsh

one. The judge's actions in imposing a term of imprisonment in place of the revoked term of probation were foreseeable under Pennsylvania law. Under 42 Pa.Cons.Stat.Ann. § 9771(c)(1), committing additional crimes will impair or endanger a previously imposed sentence of probation. *See Commonwealth v. Miller*, 358 Pa.Super. 219, 516 A.2d 1263, 1265 (1986), *allocatur denied*, 515 Pa. 599, 528 A.2d 956 (1987). Anything else "would be contrary to the policy and the purposes to be served by probation. If a probationer's criminal conduct ... discloses that probation will not be in the best interests of the public or the defendant, a court may revoke or change the order of probation. The commission of a new crime violates an implied condition of probation and suggests that the defendant is a poor probation risk." *Id.*

We note that, on this record, Parry had more than a passing familiarity with the probation process in Pennsylvania. He was on probation or parole at the time he committed the robbery for which he received the eleven and one-half to twenty-three month sentence, and he knew that by pleading guilty to the charged robbery he was in danger of being sentenced separately for violating this prior probation or parole.[12] That Parry's sentence on his guilty plea might ultimately exceed in length the term of probation was foreseeable; Parry had previously violated probation prior to pleading guilty to the robbery and conspiracy counts involved here and actually knew

---

11. Probation and parole provide the cornerstone for efforts to rehabilitate an offender, the theoretical rationale being that maintenance of family, work, and community ties are more likely to foster rehabilitation than is the harsh regimen of prison. Accordingly, to be eligible for probation and parole, an individual must possess certain good qualities of character. *See generally Commonwealth v. Butler*, 458 Pa. 289, 328 A.2d 851, 856 (1974) (parole); *Commonwealth v. Wicks*, 265 Pa.Super. 305, 401 A.2d 1223 (1979) (factors warranting probation codified under former § 1322 of Title 18 of Pennsylvania Sentencing Code); *see also* Neil P. Cohen & James J. Gobert, The Law of Probation and Parole 8–9, 16, 46–62, 111–16 (1983 & Supp.1993). In sharp contrast, special parole permits additional monitoring of, and supervision for, drug offenders, *see generally United States v. Ferryman*, 897 F.2d 584, 586 (1st Cir.), *cert. denied*, 498 U.S. 830, 111 S.Ct. 90, 112 L.Ed.2d 62 (1990), and a drug conviction is the only eligibility requirement.

12. At the plea colloquy, the judge and Parry engaged in the following exchange:

    Court: Why are you pleading guilty?

    Parry: Because I am guilty.

    Court: You admit participating in this robbery as charged?

    Parry: Yes.

    Court: Were you on probation or parole at that time?

    Parry: Yes.

    Court: Now, do you understand that by pleading guilty you also admit to whatever judge has you on probation or parole that you violated that probation or parole?

    Parry: Yes.

    Court: And you may be sentenced separately for that. Do you understand that?

    Parry: Yes.

    Court: And you discussed that aspect with your attorney as well?

    Parry: Yes, I did.

    App. 91–92.

generally that imprisonment was a possible consequence of a probation violation. On these facts, we cannot say that Parry's plea was unknowing in contravention of the requirements of due process.

### III. INEFFECTIVE ASSISTANCE OF COUNSEL

■ Parry has also argued that even if the sentencing court had no duty to advise him of the effect of revocation of probation, his counsel had such a duty, and that counsel's failure to properly advise him renders his plea involuntary. We, of course, apply a two-part test to evaluate claims of ineffective assistance of counsel. First, the defendant must show that counsel's representation fell below an objective standard of reasonableness demanded of attorneys in criminal cases. Second, counsel's error must have prejudiced the defendant. *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *United States v. Day,* 969 F.2d 39, 42 (3d Cir.1992). Where a defendant enters a plea of guilty on the advice of counsel, the voluntariness of the plea depends on whether there is a reasonable probability that, but for counsel's errors, the defendant would have proceeded to trial instead of pleading guilty. *Hill v. Lockhart,* 474 U.S. 52, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985); *United States v. Nahodil,* 36 F.3d 323, 326 (3d Cir.1994).

We are skeptical of the claim that counsel's failure to inform Parry of the possible consequences were Parry to violate his probation by committing more crimes renders counsel's assistance unprofessional or incompetent. *See Torrey,* 842 F.2d at 237 (failure to advise of possible commitment to state prison does not fall below objective standard of reasonableness). Parry received the benefit of the bargain negotiated for him by counsel. The plea bargain was satisfied when Parry received the sentence of eleven and one-half to twenty-three months imprisonment and two years probation. Counsel did not affirmatively mislead Parry with respect to the consequences of revocation of probation; the subject simply never came up. But as we observed in *United States v. Nino,* 878 F.2d 101, 105 (3d Cir.1989), courts have divided on the question whether counsel's failure to advise a client about another collateral consequence of pleading guilty—deportation—can constitute deficient representation. In *Nino,* we declined to reach the question because the prejudice prong of *Strickland* so clearly had not been satisfied. As in *Nino,* we will reserve for another day the question whether the failure to advise a defendant about the consequences of a revoked term of probation falls below an objective standard of reasonableness because Parry has clearly failed to show that he was prejudiced by the alleged improper omission.

■ A defendant alleging ineffective assistance of counsel in the guilty plea context must make more than a bare allegation that but for counsel's error he would have pleaded not guilty and gone to trial. *See, e.g., Armstead v. Scott,* 37 F.3d 202, 210 (5th Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 1709, 131 L.Ed.2d 570 (1995); *Key v. United States,* 806 F.2d 133, 139 (7th Cir.1986); *United States v. Campbell,* 778 F.2d 764, 768 (11th Cir.1985). Given Parry's criminal history,[13] and notwithstanding that the case against him may not have been overwhelming, the sentence he received seems relatively lenient. Parry knew that the charges to which he pleaded guilty could result in a much higher penalty; the record shows that Parry was advised of, and understood, the maximum sentences for robbery and conspiracy. He also understood that a term of probation carries with it some restrictions on behavior. The record does not substantiate that Parry was reluctant to plead guilty or that he claimed to be innocent. *Cf. Nahodil,* 36 F.3d at 326. Instead, it shows that his only hesitation in pleading guilty was that he might not be able to work out a suitable sentencing deal on charges that he was facing in a different county. Presumably, he worked that problem out to his satisfaction, because he made no attempt to withdraw his plea prior to being sentenced, which the

---

**13.** In addition to being either on probation or parole when he pleaded guilty to second-degree robbery and conspiracy, Parry had other prior arrests stemming in part, apparently, from a longstanding substance abuse problem.

terms of the plea agreement permitted him to do. *See supra* at 111–12.

It was only after he was arrested on the new burglary charges and his probation revoked and replaced with a term of imprisonment of two to ten years that Parry began to challenge the voluntary nature of his plea. A challenge to the voluntariness of his plea that had occurred before Parry was arrested on the new charges might possibly have given us pause, but a challenge initiated only after a new arrest and revocation of probation, which is what we face here, is self-serving and must be viewed with skepticism. *Cf. Cleary,* 46 F.3d at 312.

In sum, with respect to the prejudice prong of *Strickland,* we cannot find that there was a reasonable probability that but for counsel's alleged errors Parry would have proceeded to trial on these charges. *See Hill v. Lockhart,* 474 U.S. at 60, 106 S.Ct. at 371; *Nino,* 878 F.2d at 105 (no prejudice where counsel failed to advise of possibility of deportation); *United States v. Jordan,* 870 F.2d 1310, 1318–19 (7th Cir.) (same, where counsel failed to advise of possibility of subsequent federal prosecution), *cert. denied,* 493 U.S. 831, 110 S.Ct. 101, 107 L.Ed.2d 65 (1989); *United States v. Degand,* 614 F.2d 176, 178 (8th Cir.1980) (same, where counsel failed to advise that federal sentence would not run concurrently with state sentence).

## IV. CONCLUSION

The sentence Parry received when his probation was revoked was not a direct consequence of his guilty plea. Accordingly, due process did not obligate the judge who accepted the plea and sentenced Parry to a term of probation to advise Parry of the consequences of revocation of probation, and her failure to do so does not form a basis for invalidating the plea for violation of Parry's Fifth Amendment rights. In addition, Parry was not prejudiced by counsel's failure to advise him that a new arrest could result in revocation of probation and imposition of a term of imprisonment potentially exceeding in length the term of probation, for he did not establish that he would not have pleaded guilty but for counsel's omission. The order of the district court dismissing the petition for a writ of habeas corpus will therefore be affirmed.