**Yohani Antonio TAVERAS–LOPEZ, Petitioner,**

v.

**Janet RENO, Attorney General; Doris Meissner, INS Commissioner; and M. Francis Holmes, INS Director Philadelphia District, Respondents.**

No. Civ.A. 3:CV–00–0236.

United States District Court, M.D. Pennsylvania.

Dec. 8, 2000.

**600**

Yohani Antonio Taveras-Lopez, pro se.

J. Justin Blewitt, Assist. U.S. Atty., Scranton, PA, for respondents.

## MEMORANDUM

VANASKIE, Chief Judge.

This is a habeas corpus proceeding under 28 U.S.C. § 2241. At issue is the validity of an order of an Immigration Judge directing the removal of petitioner Yohani Antonio Taveras–Lopez from the United States based upon his 1998 plea of guilty to a cocaine trafficking charge. Taveras–Lopez, a long-term lawful permanent resident of the United States, claims that the underlying conviction is invalid because he was not warned of the deportation consequences of his guilty plea before he entered it. In addition to assailing the underlying conviction, Taveras–Lopez challenges the order of removal on the ground that the failure to accord lawful permanent resident aliens, such as Taveras–Lopez, eligibility for a discretionary waiver of removal through § 212(h) of the Immigration and Naturalization Act ("INA"), 8 U.S.C. § 1182(h), while granting such eligibility to illegal aliens, denied him equal protection of the law. Finally, Taveras–Lopez asserts that the failure to accord him an opportunity to seek a discretionary waiver of removal contravenes an international treaty to which the United States is a signatory and principles of international law.[1]

---

1. Taveras–Lopez also challenged the validity of his incarceration *during* the removal proceedings, asserting that he was held in custody pursuant to the authority of § 236(c) of the INA, 8 U.S.C. § 1226(c). Section 236(c) generally requires that an alien who is deportable by reason of a drug trafficking conviction be held in custody pending the outcome of removal proceedings. When Taveras–Lopez filed his habeas corpus petition in this Court, however, the removal proceedings had been concluded. Thus, at the time the habeas corpus petition was filed in this action, Taveras–Lopez was not being held in custody pursuant to § 236(c), but was instead being detained under 8 U.S.C. § 1231(a). Under these circumstances, Taveras–Lopez challenge to the constitutionality of § 236(c) is not justiciable.

This Court has jurisdiction to consider the claims asserted by Taveras–Lopez in his habeas corpus petition filed under § 2241. *See Liang v. INS,* 206 F.3d 308 (3d Cir.2000); *Ngo,* 192 F.3d at 393; *Catney v. INS,* 178 F.3d 190, 195 (3d Cir. 1999); *Sandoval v. Reno,* 166 F.3d 225, 237 (3d Cir.1999); *Steele, supra,* Slip op. at 5–6. Having carefully considered the contentions of the parties in the context of the facts of this case and the applicable law, I find that Taveras–Lopez has not satisfied the exhaustion of state court remedies doctrine so that his § 2241 petition may not be used to mount a collateral challenge to the validity of the state court conviction on which the order of removal depends. Even if a deportable alien could challenge the deportation-causing conviction in a § 2241 proceeding brought after a final deportation order has been entered without exhausting state court remedies, Taveras–Lopez' alleged unawareness of the deportation consequences of a drug trafficking conviction does not provide a basis for invalidating his conviction. Taveras–Lopez' equal protection claim is without merit because both an illegal alien and a lawful permanent resident are treated the same with respect to the deportation consequences of a cocaine drug trafficking conviction—neither is eligible for discretionary relief from removal. Finally, the existence of provisions in an international treaty or principles of international law that arguably conflict with a removal order authorized by legislation passed by Congress does not afford a basis for invalidating the removal order. Accordingly, the habeas corpus petition will be denied and the stay of removal effected by this Court's Order of February 8, 2000 will be vacated.

## I. BACKGROUND

Taveras–Lopez is a citizen of the Dominican Republic. He obtained lawful permanent residence status in 1981. He claims to reside in the United States with his family, which includes his mother, who is also a lawful permanent resident, his brother and sister, who are United States citizens, and his common law wife and daughter, also United States citizens.

In 1998, Taveras–Lopez was convicted in New York state court of the attempted criminal sale of a controlled substance in the third degree, to wit, cocaine, in violation of sections 110 and 220.39 of the New York Penal Code. New York law classifies criminal sale of a controlled substance in the third degree as a class B felony. N.Y.Penal Law § 220.39 (McKinney 1999). Taveras–Lopez was sentenced to a one year term of imprisonment.

In January of 1999, Taveras–Lopez was served by the INS with a Notice to Appear, charging that he was subject to removal under sections 237(a)(2)(A)(iii) and 237(a)(2)(B)(i) of the INA, 8 U.S.C. § 1227(a)(2)(A)(iii) and (a)(2)(B)(i).[2] On August 26, 1999, an Immigration Judge found that there existed grounds for the removal of Taveras–Lopez and ordered

See *Chukwuezi v. Reno,* Civil Action No. 3:CV–99–2020 (M.D.Pa., July 24, 2000). Taveras–Lopez may be entitled to administrative review of his continuing confinement while he pursues his challenges to the removal order and the Immigration and Naturalization Service ("INS") seeks to effect his removal. *See Ngo v. Immigration & Naturalization Serv.,* 192 F.3d 390, 393 (3d Cir.1999); *Steele v. Blackman,* No. 3:99–CV–1256, Slip op. at 13 n. 9 (M.D.Pa., Jan. 14, 2000). That issue, however, is not properly before the Court at this time.

**2.** Section 237(a)(2)(A)(iii) renders deportable any alien convicted of an aggravated felony at any time after admission to the United States. Taveras–Lopez does not dispute the fact that his New York state court conviction qualifies as an "aggravated felony" for purposes of removal. Section 237(a)(2)(B)(i) renders deportable any alien who at any time after admission to the United States has been convicted of a violation of or an attempt to violate any law of a State or of the United States relating to a controlled substance, other than a single offense involving possession for personal use of 30 grams or less of marijuana. As noted above, the offense to which Taveras–Lopez pled guilty involved cocaine.

that he be deported to the Dominican Republic. On January 7, 2000, the Board of Immigration Appeals affirmed the Immigration Judge's ruling. In sustaining the removal order, the BIA held that it did not have authority to consider Taveras–Lopez' challenge to the voluntariness of his guilty plea and that Taveras–Lopez was ineligible for a waiver of inadmissability under § 212(h) of the INA, 8 U.S.C. § 1182(h).[3]

On January 27, 2000, Taveras–Lopez filed a petition for a writ of habeas corpus under 28 U.S.C. § 2241 in the United States District Court for the Eastern District of Pennsylvania. The case was transferred to this Court by order entered February 4, 2000. By order dated February 8, 2000, removal of Taveras–Lopez was stayed and a response to the habeas corpus petition was required. On March 13, 2000, the government responded to the habeas corpus petition. Taveras–Lopez filed a reply to the response on March 22, 2000. This matter is ripe for disposition.

## II. DISCUSSION

### A. The Validity Of The Underlying Conviction

Contending that he was not advised that deportation was a consequence of a drug trafficking conviction, Taveras–Lopez challenges the validity of his conviction on the

grounds that his plea was not entered knowingly and voluntarily and that he did not receive effective assistance of counsel. Respondents assert that, while this Court may have jurisdiction under § 2241 to entertain a challenge to the validity of the removal order, "jurisdiction does not extend to collateral review of the validity of [the] state conviction that is the predicate for the order." (Response to Habeas Corpus Petition (Dkt. Entry 6) at 2.)

In support of their position, respondents rely upon *Contreras v. Schiltgen,* 151 F.3d 906 (9th Cir.1998). In *Contreras,* the petitioner contended that the state court conviction that formed the premise for a removal order was invalid because counsel had been ineffective in advising him to plead guilty. Relying upon *Custis v. United States,* 511 U.S. 485, 114 S.Ct. 1732, 128 L.Ed.2d 517 (1994), which held that a defendant could not obtain collateral review of state convictions during federal court sentencing proceedings even though the state convictions would enhance the federal sentence, the Ninth Circuit held that "[w]hen the federal proceeding is governed by statutes that limit inquiry to the fact of conviction, there can be no collateral review of the validity of the underlying conviction except for *Gideon* claims." *Contreras,* 151 F.3d at 908.[4]

---

3. Technically speaking, § 1182, which concerns the grounds on which an alien may not be admitted to the United States, is inapplicable to Taveras–Lopez, who is a lawful permanent resident. It has been recognized, however, that an alien who is in the United States may seek to avoid a removal order on the basis of the discretion afforded the Attorney General of the United States to waive grounds of inadmissibility that also render the alien removable. *See* Response to Habeas Corpus Petition (Dkt. Entry 6) at 9. In this regard, § 1182(h) accords the Attorney General the discretion to waive the exclusionary effect of certain criminal conduct that constitutes an "aggravated felony," but § 240A of the INA, 8 U.S.C. § 1229b, dealing with discretionary cancellation of removal by the Attorney General, does not authorize the Attorney General to waive the exclusionary effect of any "aggravated felony."

4. In *Custis,* the Court, recognizing a type of a "jurisdictional significance to the failure to appoint counsel," 511 U.S. at 494, 114 S.Ct. 1732, held that a claim that a conviction was obtained in violation of the right to counsel established in *Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), could be pursued at a sentencing proceeding in which the conviction obtained in violation of *Gideon* was used to enhance the federal sentence. Taveras–Lopez contends that his claim of ineffective assistance of counsel is tantamount to a *Gideon* denial of counsel claim, which, under *Custis* may be pursued in a collateral challenge to a sentence-enhancing conviction. *Custis,* however, precludes the very argument advanced by Taveras–Lopez. Indeed, in *Custis,* the petitioner claimed the denial of effective assistance of counsel in connection with a guilty plea. The Court held that such a claim could not be pursued in the sentencing proceeding at which the chal-

In *Kopilchak v. INS*, No. 98 Civ. 7931, 2000 WL 278074 (S.D.N.Y. March 14, 2000), the court addressed a fact scenario similar to that presented in *Contreras* and here. In *Kopilchak*, the petitioner was subject to a removal order based upon a conviction obtained by guilty plea. Contending that she had plead guilty only because she believed the police to be corrupt and that she·was innocent of the crime charged, the petitioner sought to avoid the removal order. As in *Contreras*, the court held that it did not have the authority "to review the alleged factual innocence of a defendant who voluntarily pled guilty to the crime for which the defendant is being deported." *Id.* at *1.

Independent research has not disclosed any case that allowed a petitioner to contest deportation on the theory that the conviction that formed the predicate for the deportation order was invalid. The Third Circuit apparently has not addressed the justiciability of a collateral attack to the validity of a state court conviction in the context of a § 2241 challenge to a removal order.

There are, to be sure, compelling reasons counseling against allowing a § 2241 petition challenging the validity of a removal order to be the vehicle for a contest to the deportation-causing conviction. First, there is a strong interest in the finality of convictions. In *Custis*, the Court emphasized this interest in holding that a sentence-enhancing conviction cannot be attacked in the sentencing proceedings itself. Indeed, the Court recognized that concern for finality bore "extra weight" where, as here, the conviction was obtained by guilty plea. 511 U.S. at 497, 114 S.Ct. 1732. Second, there is the practical point that the federal custodian who responds to the § 2241 petition has no basis on which to defend an underlying state court conviction. The task of the immigration officials is simply to determine whether the non-citizen stands convicted of a deportable defense. The validity *vel non* of the removal-causing conviction is not within the purview of the question of whether the alien is subject to removal. To allow a § 2241 proceeding involving an alien in INS custody to serve as the vehicle for a collateral attack to a state court conviction would require involvement of the state court prosecutors. Because the sentence for the underlying conviction has been fully served, state court prosecutors may have no interest in vindicating their convictions. Congressional policy to remove from the United States those who have committed serious crimes may thus be thwarted. Finally, the strong congressional interest in streamlining the removal process would be circumvented by allowing § 2241 to be the avenue for a collateral challenge to an underlying state court conviction.

There are, however, countervailing considerations. Deportation is a drastic sanction. As described by Judge Gertner in *Wallace v. Reno*, 24 F.Supp.2d 104, 112 (D.Mass.1998):

> Deportation, in the words of the Supreme Court, is 'at times equivalent of banishment or exile....' Perhaps nowhere outside of the criminal law are the consequences for the individual so serious. It may deprive the alien of 'all that makes life worth living,' including the 'right to stay and live and work in this land of freedom,' or the possibility of living with her immediate family, 'a right that ranks high among the interests of the individual.' [Citations omitted.]

Courts should be reluctant to permit the bare fact of conviction to result in removal where there may not have been an opportunity to mount an attack on a constitutionally-suspect conviction. This may be especially true where, as here, a guilty plea results in a short sentence, one which

---

lenged sentence-enhancing conviction was to be considered, explaining that such an alleged constitutional violation does not rise "to the level of a jurisdictional defect resulting from the failure to appoint counsel at all." 511 U.S. at 496, 114 S.Ct. 1732.

a person could view as a benefit while not taking into account the consequence of deportation lurking in the background. The fact that a removal order could impose on state prosecutors the burden of defending the constitutionality of their conviction should not mean that an individual alien is deprived of recourse to a federal forum to assail a conviction, the direct consequence of which is the loss of the right to remain in the United States. A person convicted of a state crime and sentenced to life in prison is assured of an opportunity to test the constitutionality of the conviction in a federal court. A lawful permanent resident alien, such as Taveras–Lopez, convicted of a crime carrying a relatively short sentence followed by a lifetime banishment from the United States, should not lightly be denied the same opportunity.

Recognition of a right to a federal forum to attack a state court conviction for which the sentence has been served but which continues to have continuing harsh consequences is implicit in Third Circuit holdings allowing a § 2254 petition to challenge a past conviction that enhances a current sentence. *See, e.g., Young v. Vaughn,* 83 F.3d 72 (3d Cir.), *cert. denied sub nom., Abraham v. Young,* 519 U.S. 944, 117 S.Ct. 333, 136 L.Ed.2d 245 (1996); *Clark v. Pennsylvania,* 892 F.2d 1142 (3d Cir.1989), *cert. denied sub nom., Castille v. Clark,* 496 U.S. 942, 110 S.Ct. 3229, 110 L.Ed.2d 675 (1990). In *Young,* our Court of Appeals read *Custis* narrowly, confining its holding to its facts: a collateral challenge to a sentence-enhancing conviction made in the sentencing proceeding itself. In *Young,* the court ruled that a § 2254 petition could be used to attack current confinement by challenging the constitutionality of an expired conviction that caused the current confinement. More recently, our Court of Appeals, *en banc,* reaffirmed *Young,* holding that a petitioner satisfies "the 'in custody' requirement for federal habeas jurisdiction when he asserts a challenge to a sentence he is currently serving that has been enhanced by the allegedly invalid prior conviction." *Coss v. Lackawanna County,* 204 F.3d 453, 459 (3d Cir.), *pet. for cert. granted,* —— U.S. ——, 121 S.Ct. 297, 148 L.Ed.2d 238 (2000).[5]

■ In *Young,* the court found that but for the otherwise expired conviction that the petitioner wanted to challenge, the petitioner would not then be in custody. The same observation can be made here. But for Taveras–Lopez' 1998 conviction, he would not be in INS custody awaiting deportation. The logic of *Clark, Young* and *Coss* would thus appear to support the availability of collateral review of an otherwise expired state court conviction in a § 2241 proceeding challenging a removal order based upon the otherwise expired state court conviction.

■ Assuming, however, that a § 2241 petition can serve as the vehicle for a challenge to a deportation-causing state court conviction, it does not follow that exercise of jurisdiction over such a claim is mandated. There are the interests of federalism and comity underlying the exhaustion of state court remedies doctrine that must be respected. *See Doctor v. Walters,* 96 F.3d 675, 683 (3d Cir.1996). Respect for the presumptive validity of state court judgments and the ability of state courts to correct, in the first instance, constitutional infirmities, demand that a petitioner demonstrate either exhaustion of state court processes or, alternatively, the absence of state court remedies. To the extent that state court remedies are unavailable as a result of a procedural default on the part of the petitioner, the petitioner must demonstrate both justifiable cause for the procedural default and prejudice, or show a miscarriage of justice. *Coleman v. Thompson,* 501 U.S. 722, 750, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991).

---

**5.** The Court has granted certiorari on the question of whether the custody requirement of the federal habeas corpus statute precludes a challenge to a fully-expired conviction used to enhance the petitioner's current sentence. 69 U.S.L.W. 3249.

In this case, Taveras–Lopez has not suggested that he has exhausted state court challenges to the validity of his conviction. Nor has he suggested the absence of available state court corrective processes. On the contrary, in his reply to the government's response to the habeas corpus petition (Dkt. Entry 8), Taveras–Lopez states that he "has been inclined to attack the guilty plea in the state court. . . ." (*Id.* at 2.) Absent satisfaction of the exhaustion doctrine, a § 2241 petitioner in Taveras–Lopez' circumstances should not be permitted to proceed with a federal court collateral challenge to the validity of the state court conviction.

▮ While it may be appropriate in some circumstances for a federal court to stay deportation pending exhaustion of state court remedies to challenge the deportation-causing state court conviction, the clear absence of any merit to the claims presented by Taveras–Lopez makes such extraordinary relief inappropriate in this case. Neither Taveras–Lopez' challenge to the voluntariness of his plea or his claim of ineffective assistance of counsel on the ground that Taveras–Lopez was unaware of deportation consequences when he entered his plea of guilty affords a basis for invalidating his conviction.

▮ As to the validity of the plea itself, the Third Circuit has ruled that failure to inform a defendant that a guilty plea will expose the defendant to deportation does not vitiate the plea. *See United States v. Romero–Vilca,* 850 F.2d 177, 179 (3d Cir.1988). So, too, has the Second Circuit ruled. *See United States v. Santelises,* 476 F.2d 787, 789 (2d Cir.1973). An identical result has been reached by the New York Court of Appeals. *See People v. Ford,* 86 N.Y.2d 397, 657 N.E.2d 265, 633 N.Y.S.2d 270 (1995). The premise for these decisions is that a defendant has a right only to be warned of the *direct* consequences of a guilty plea. *See Brady v.*

*United States,* 397 U.S. 742, 755, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970). "A direct consequence is one that has a 'definite, immediate and largely automatic' effect on the range of the defendant's punishment." *Parry v. Rosemeyer,* 64 F.3d 110, 114 (3d Cir.1995), *cert. denied,* 516 U.S. 1058, 116 S.Ct. 734, 133 L.Ed.2d 684 (1996). The Third Circuit has ruled that " '[t]he only consequences considered direct are the maximum prison term and fine for the offense charged.' " *Id.* Hence, deportation, albeit a plainly foreseeable result of a plea to a narcotics-trafficking crime, is not a direct consequence that must be explained to a defendant to assure a knowing and voluntary plea. As explained in *People v. Ford,* 86 N.Y.2d at 403, 633 N.Y.S.2d 270, 657 N.E.2d 265, "[d]eportation is a collateral consequence of conviction because it is a result peculiar to the individual's personal circumstances and one not within the control of the court system." Accordingly, the alleged failure to be warned of the deportation consequence of his guilty plea does not afford a meritorious basis for challenging Taveras–Lopez' New York state court conviction.

▮ Although the Third Circuit has not decided whether failure to warn a client of the deportation consequences of a plea constitutes ineffective assistance of counsel, *see United States v. Nino,* 878 F.2d 101, 105 (3d Cir.1989), the New York Court of Appeals has explicitly rejected the contention advanced by Taveras–Lopez. In *People v. Ford,* the Court of Appeals held that, in the absence of affirmative misstatements by defense counsel, failure to advise of the deportation consequences of a conviction does not constitute ineffective assistance of counsel.[6] The Second Circuit, *United States v. Santelises,* 509 F.2d at 704, and other federal courts have reached the same ruling. *See, e.g., United States v. Banda,* 1 F.3d 354,

---

**6.** Taveras–Lopez does not contend that his lawyer affirmatively misled him as to the de-   portation consequences of a guilty plea.

356 (5th Cir.1993); *United States v. Del Rosario*, 902 F.2d 55, 58–59 (D.C.Cir.), cert. denied, 498 U.S. 942, 111 S.Ct. 352, 112 L.Ed.2d 316 (1990); *United States v. Yearwood*, 863 F.2d 6, 7–8 (4th Cir.1988); *United States v. Oyeyinka*, No. Civ. A. 95–2675, 1998 WL 964222 (E.D.Pa., Oct.9, 1998). In light of the weight of the authority, and taking into account in particular the view of the New York Court of Appeals on the issue, I find that Taveras–Lopez' ineffective assistance of counsel claim lacks merit. Accordingly, he is not entitled to any relief based upon the collateral challenge to his conviction.

**B. The Equal Protection Claim**

Asserting that an illegal alien would be eligible under 8 U.S.C. § 1182(h) to obtain discretionary relief from a removal order prompted by an aggravated felony conviction, Taveras–Lopez maintains that the denial of such relief to him due to his status as a lawful permanent resident offends equal protection principles.[7] Taveras–Lopez' assertion that an illegal alien would be eligible to apply for discretionary abatement of a removal order is based on *In re Michel*, BIA Int.Dec. 3335, 1998 WL 40407 (Jan. 30, 1998), which held that § 1182(h), "while specifically precluding waiver eligibility for a lawful permanent resident who has been convicted of an aggravated felony, imposes no such restriction on one who has not been admitted previously as a

lawful permanent resident." In *Song v. INS*, 82 F.Supp.2d 1121 (C.D.Cal.2000), the court held that this disparate treatment between lawful permanent residents and illegal aliens insofar as eligibility for relief under § 1182(h) was concerned did not have a rational basis, explaining:

> [T]here are very logical reasons for treating lawful permanent residents better than illegal immigrants. However, in this case, Congress has intentionally (or more probably unintentionally) created a distinction which treats lawful permanent residents worse than illegal immigrants. It has created a distinction which therefore places an incentive on being an illegal immigrant rather than a legal immigrant and which punishes those with closer ties to the United States.... [I]t is irrational to punish aliens more heavily simply because they have closer ties to the United States.

*Id.* at 1133 (citations omitted).

■ If § 1182(h) afforded illegal aliens, but not lawful permanent resident aliens, a discretionary waiver of the exclusionary effect for *all* aggravated felonies, *Song* may be persuasive. But § 1182(h) only authorizes the Attorney General, in her discretion, to waive the exclusionary mandate of certain specified aggravated felonies.[8] Significantly, the waiver authorized by § 1182(h) only applies to a drug traf-

---

7. Section 1182(h), while granting the Attorney General discretionary authority to waive the exclusionary effect of certain criminal convictions, provides that "[n]o waiver shall be granted ... in the case of an alien who has previously been admitted to the United States as an alien lawfully admitted for permanent residence if since the date of such admission the alien has been convicted of an aggravated felony...."

8. In pertinent part, § 1182(h) provides:
   The Attorney General may, in [her] discretion, waive the application of subparagraphs (A)(i)(I), (B), (D), and (E) of subsection (a)(2) of this section and subparagraph (A)(i)(II) of such subsection insofar as it relates to a single offense of simple possession of 30 grams or less of marijuana....

Subsection (a)(2) of § 1182 authorizes exclusion of aliens convicted of certain crimes. Subparagraph (A)(i)(I) concerns "a crime involving moral turpitude....." Subparagraph (B) deals with multiple criminal convictions, regardless of whether the offenses involved moral turpitude, and for which the aggregate sentences to confinement were at least five years. Subparagraph (D) deals with prostitution and commercialized vice. Subparagraph (E) pertains to aliens involved in serious criminal activity but who have received immunity from prosecution. Subparagraph (A)(i)(II) renders excludable an alien who has violated any law or regulation of a State, the United States, or a foreign country relating to a controlled substance.

ficking offense if it related to a single incident of simple possession of 30 grams or less of marijuana. Notably absent from the listing of crimes for which a waiver of excludability may be obtained are drug trafficking crimes of the type involved here. As indicated above, with respect to a violation of any law of a state or foreign country related to a controlled substance, waiver of the exclusory effect of such a conviction is available only for simple possession of no more than 30 grams of marijuana. In addition, the Attorney General does not have the discretion to waive exclusion of an alien "who the ... immigration officer knows or has reason to believe is or has been an illicit trafficker in any ... controlled substance or is or has been a knowing assister, abettor, conspirator, or colluder with others in the illicit trafficking in any such controlled substance." 8 U.S.C. § 1182(a)(2)(C).

■ The premise for Taveras–Lopez' equal protection claim is that an illegal alien convicted of a cocaine trafficking crime would be eligible to apply for a discretionary waiver of removal under § 1182(h), but a lawful permanent resident alien would not be eligible. This premise, however, has proven to be unsound. Neither an illegal alien nor a lawful permanent resident alien may apply for a waiver of the effect of a drug trafficking crime that involves more than simple possession of 30 grams of marijuana. Since there is no disparate treatment between an illegal alien and the lawful permanent resident alien when it comes to a drug trafficking

crime involving cocaine, there is no basis for an equal protection claim.

Significantly, *Song* did not involve a drug trafficking conviction. Instead, it concerned a conviction for a crime involving moral turpitude, a conviction for which a lawful permanent resident could not seek waiver of its exclusory effect, but for which an illegal alien could. More on point with this case than *Song* is *Hypolite v. Blackman*, 57 F.Supp.2d 128 (M.D.Pa. 1999). In *Hypolite*, the petitioner sought to challenge a removal order on equal protection grounds, complaining that some criminal aliens would be entitled to a waiver under § 1182(h) while he was ineligible. Judge Caldwell of this Court observed that the petitioner's drug trafficking conviction was not within the categories of aggravated felonies for which a waiver could be sought under § 1182(h). Judge Caldwell thus rejected the equal protection claim, explaining:

> [N]o criminal alien convicted of Petitioner's aggravated felony ... is entitled to a waiver under § 1182(h), INA § 212(h). Hence, because the substantive standard applicable to such aliens remains the same, there is no equal protection violation.

*Id.* at 134.

As in *Hypolite*, the conviction at issue in this case is not eligible for § 1182(h) relief for both legal and illegal immigrants. Accordingly, since similarly-situated individuals are, in fact, treated similarly, there is no equal protection issue here.[9]

---

9. Any claim that equal protection is offended because the exclusory effect may be waived with respect to some aggravated felonies, but not cocaine trafficking, is without merit. The pertinent analytical framework was articulated in *DeSousa v. Reno*, 190 F.3d 175, 184 (3d Cir.1999):

> [D]isparate treatment of different groups of aliens triggers only rational basis review under equal protection doctrine. Under this minimal standard of review, a classification is accorded 'a strong presumption of validity' and the government has no obligation to produce evidence to sustain its

rationality. Indeed, such a classification can be upheld as constitutional even when it is based upon rational speculation rather than on empirical data. Once a facially legitimate reason for the classification is found, whether such a reason was articulated by Congress or not, we must rule the classification constitutional. As always, when performing such review, our role is not to judge the wisdom or fairness of Congress' policy choices, but rather their constitutionality.

Clearly, Congress could rationally determine that drug trafficking crimes should be treated

## C. International Law Claims

■ The final basis on which Taveras–Lopez seeks to avoid removal from the United States is international law. Taveras–Lopez contends that "his long term presence in the United States as a permanent resident and his strong family ties in the Country should guarantee him a grant of humanitarian relief from deportation." (Habeas Corpus Petition at p. 23.) Taveras–Lopez ties this assertion to the International Covenant of Civil Political Rights ("ICCPR"), 99 U.N.T.S. 171 (entered into force March 23, 1976, entered into force for the United States September 8, 1992), customary international law, and the doctrine of *jus cogens*.[10]

The pertinent provisions of the ICCPR were explained by Judge Weinstein in *Maria v. McElroy*, 68 F.Supp.2d 206, 232 (E.D.N.Y.1999):

Article 23(1) of the ICCPR provides that '[t]he family is the natural and fundamental group unit of society and is entitled to protection by society and the State.' Implicit in this right is the right of family members to live together.

To protect the fundamental right of families to live together, the ICCPR provides that '[n]o one shall be subjected to arbitrary or unlawful interference with his ... family....' Applying this requirement in the context of deportation laws, the United Nations Human Rights Committee has explicitly recognized that deportation from a country in which close family members reside can constitute an interference with family life....

By specifying that interference with family shall be 'unlawful' and shall not be arbitrary,' the ICCPR prevents a nation from separating families in a manner that, while in accordance with its domestic law, is nonetheless unreasonable and in conflict with the underlying provisions of the ICCPR. As explained by the authoritative United Nations Human Rights Committee, 'the introduction of the concept of arbitrariness is intended to guarantee that even interference provided for by law should be in accordance with the provisions, aims, and objectives of the Covenant and should be, in any event, reasonable in the particular circumstances....'

Article 13 of the ICCPR requires that an alien lawfully residing in a territory 'be allowed to submit the reasons against his expulsion' unless compelling interests of national security require otherwise.

In addition to relying on the ICCPR, Taveras–Lopez contends that an opportunity to convince a neutral decision-maker of the extreme hardship confronting a family by the deportation of one of its members is also a right recognized by customary international law. Indeed, Taveras–Lopez asserts that the opportunity to seek a waiver of removal due to family hardship is recognized in international law as *jus cogens*.

Taveras–Lopez contends that these principles of international law mandate that he be accorded the opportunity afforded by

more harshly than other types of crimes. There has been declared a national "war" on drug crimes, and the decision not to extend the § 1182(h) waiver to those convicted of drug trafficking crimes is consistent with the emphasis on attempting to rid society of drugs. Congress could rationally determine that narcotics-related offenses pose a serious problem for American society, and its decision to exclude drug trafficking crimes from the limited waiver afforded by § 1182(h) cannot be said to be irrational.

**10.** *"Jus cogens* describes peremptory norms of law which are nonderogable and form the

highest level of international law." *Gisbert v. United States Attorney General*, 988 F.2d 1437, 1448 n. 22 (5th Cir.1993). According to the Vienna Convention on the Law of Treaties, a *jus cogens* norm is one that "is accepted and recognized by the international community of states as a whole as a norm from which no derogation is permitted and which can be modified only by a subsequent norm of general international law having the same character." United Nations Vienna Convention on the Law of Treaties, ART. 53, May 3, 1969, 1155 U.N.T.S. 331.

§ 240A of the INA, 8 U.S.C. § 1229b, to seek cancellation of removal. As written, § 240A disqualifies Taveras–Lopez from a discretionary cancellation of removal because of his conviction for an aggravated felony. *See* 8 U.S.C. § 1229b(a)(3). Taveras–Lopez contends that international law trumps this statutory disqualification.

■■■■ Contrary to Taveras–Lopez' position, the disqualification of aggravated felons from eligibility for a discretionary cancellation of removal effected by the 1996 Illegal Immigration Reform and Immigrant Responsibility Act, Pub.L. 104–208, 110, Stat. 3009–594, displaces any obligation assumed by the United States as a 1992 signatory to the ICCPR. *See Breard v. Greene,* 523 U.S. 371, 376, 118 S.Ct. 1352, 140 L.Ed.2d 529 (1998) (" 'We have held that an Act of Congress ... is on a full parity with a treaty, and that when a statute which is subsequent in time is inconsistent with a treaty, the statute, to the extent of conflict, renders the treaty null.' "); *Rainey v. United States,* 232 U.S. 310, 316–17, 34 S.Ct. 429, 58 L.Ed. 617 (1914) (same); *Committee of United States Citizens Living in Nicaragua v. Reagan,* 859 F.2d 929, 935–37 (D.C.Cir.1988); *Mississippi Poultry Ass'n v. Madigan,* 992 F.2d 1359, 1365–66 (5th Cir.1993). Nor may a principle of customary international law preempt a contrary enactment of Congress. *See Barrera–Echavarria v. Rison,* 44 F.3d 1441, 1450–51 (9th Cir.1995), *cert. denied,* 516 U.S. 976, 116 S.Ct. 479, 133 L.Ed.2d 407 (1995); *United States v. Pinto–Mejia,* 720 F.2d 248, 259 (2d Cir.1983) ("[I]n enacting statutes, Congress is not bound by an international law ... [;i]f it chooses to do so, it may legislate [contrary to] the limits posed by international law"); *In re Cuban,* 822 F.Supp. 192, 197–98 (M.D.Pa.1993) (Three–Judge Court) ("Congress in enacting legislative law ... is not bound by international law"). Thus, "no enactment of Congress can be challenged on the ground that it violates customary international law." *Committee of United States Citizens Living in Nicaragua,* 859

F.2d at 939. As explained in § 115(1)(a) of the *Restatement (Third) of Foreign Relations Law* (1987), "[a]n Act of Congress supersedes an earlier rule of international law or a provision of an international agreement as law of the United States if the purpose of the act to supersede the earlier rule or provision is clear and if the act and the earlier rule or provision cannot be fairly reconciled."

In this case, Congress clearly intended to preclude waiver of deportation for a certain class of convicted felons. This clear congressional declaration cannot be reconciled with the claim of Taveras–Lopez to a right under the ICCPR and customary international law to an opportunity to submit reasons that militate against expulsion. Under the circumstances, the congressional declaration controls and Taveras–Lopez may not rely upon treaty or customary international law as the predicate for a discretionary waiver from removal.

■■■■ Taveras–Lopez' reliance *jus cogens* is also misplaced. To become a peremptory norm under the doctrine of *jus cogens* there must be general recognition by " 'the international community ... as a whole [that] this is a norm from which no derogation is permitted.' " *Committee of United States Citizens Living in Nicaragua,* 859 F.2d at 940. There are only a few such norms. The *Restatement (Third) of Foreign Relations Law* acknowledges only two categories of such norms—(1) "the principles of the United Nations Charter prohibiting the use of force," *Restatement (Third) of Foreign Relations Law* § 102, cmt. k (1987), and fundamental human rights law prohibiting genocide, slavery, murder, torture, prolonged arbitrary detention, and racial discrimination. *Id.,* § 702. An opportunity to be heard before being deported, with the attendant break up of the family unit, is not such a fundamental right where, as here, the ground for deportation is the conviction for an aggravated felony. Moreover, the congressional determination that drug traf-

ficking convictions mandate deportation has a rational basis in governmental efforts to curb illegal activity and use of controlled substances, and is not arbitrary. Accordingly, Taveras–Lopez is not entitled to relief on the basis of international law.

## III CONCLUSION

For the reasons set forth above, Taveras–Lopez is not entitled to habeas corpus relief in connection with the final order of removal. Therefore, the stay of removal will be vacated and his habeas corpus petition denied.