In the

# United States Court of Appeals
## For the Seventh Circuit

―――――――――

No. 17-1910

GEOMETRY L. MILTON,

*Petitioner-Appellant,*

*v.*

GARY A. BOUGHTON,

*Respondent-Appellee.*

―――――――――

Appeal from the United States District Court for the
Eastern District of Wisconsin
No. 14-CV-312 — **Nancy Joseph**, *Magistrate Judge.*

―――――――――

ARGUED AUGUST 7, 2018 — DECIDED AUGUST 30, 2018

―――――――――

Before KANNE, SCUDDER, and ST. EVE, *Circuit Judges.*

PER CURIAM. Geometry Milton was convicted by a Wisconsin jury of first-degree reckless homicide as a party to a crime. He challenges the district court's denial of his habeas corpus petition under 28 U.S.C. § 2254, arguing that trial counsel was ineffective for not moving to suppress identification evidence from an uncounseled post-indictment lineup. But the Wiscon-

sin Court of Appeals determined that even if counsel had successfully challenged the lineup, there was no reasonable probability that the outcome of the trial would differ.

## I. BACKGROUND

Late one August night in 2008, Timothy Cotton was visiting his sister Kimberly Mayfield at her Milwaukee home when he scuffled with three men. Cotton was beaten and shot; he died from the gunshot wounds.

Milton and another man were charged with being a party to first-degree reckless homicide and were tried separately. The key issues for Milton's jury were whether he was present at the shooting and, if so, whether he did anything to aid and abet it. Four eye-witnesses testified: Kimberly (Cotton's sister), her son James (who was 18 at the time of the shooting), Kimberly's boyfriend Robert Howard, and a neighbor from across the street, Cedric Jones.

Kimberly and James were interviewed by detectives shortly after the shooting. James said he was in his bedroom when his mother woke him up and told him that her brother (i.e., his uncle, Cotton) was in a fight in front of the house. James told a detective that he went toward the front of the house and, just as he was opening the front door, heard eight gunshots and backed away. He then looked out and saw his uncle slumped over a vehicle.

At the trial (about a year later), James testified to having seen both the beating and the shooting. He said he knew Milton from the neighborhood and saw him roughly once a month. James identified Milton first in a photo array, then in a post-indictment lineup, and finally at trial.

Howard (Kimberly's boyfriend) testified that he saw the fight through a window. He identified Milton in a post-indictment lineup. Howard also viewed a photo array during the investigation, but could not identify anyone from it. He testified at trial that Milton was one of three men involved in the beating but that he did not see a gun on Milton.

Cedric Jones, a neighbor of the Mayfield's, testified that he could hear the argument from the second-floor bedroom of his home. During their investigation, police showed Jones two photo arrays. Detective Mark Peterson testified that Jones positively identified Milton in the first array and identified another man—as the shooter—in the second array. But at trial Jones told a different story, testifying that he had only identified his own relative and did not know anyone else in the array. Jones also testified that he was not able to identify anyone in court who was present during the shooting, nor did he recall having ever identified Milton in any prior forum.

The prosecution also presented some physical evidence: a .45 caliber bullet casing found outside Milton's home that matched a casing found at the scene of the shooting and a black-and-white bandana found in Milton's bedroom that matched the description of a bandana that Jones and Howard said the shooter was wearing. Jurors heard one firearm expert testify that the bullet casings came from the same gun, although a detective opined that the comparison would be inconclusive without the actual gun, which was never recovered.

The State filed a criminal complaint against Milton in August 2008, and he was arrested pursuant to a warrant in September, about a month after the shooting. Two days later, Milton invoked his right to counsel during a police interview.

Later that same day, Milton participated, without counsel, in a live police lineup viewed by Howard, Kimberly, and James. The record is silent regarding whether Milton waived counsel at the lineup.

The State referenced the lineup in its opening statement and closing argument, and also elicited testimony about it from Howard and James. The jury convicted Milton, and he was sentenced to 31 years' imprisonment and 10 years' extended supervision.

Milton appealed on several grounds, including trial counsel's failure to challenge the uncounseled lineup identifications and any in-court identifications tainted by the lineup. The Wisconsin Court of Appeals acknowledged that a criminal defendant is entitled to a lawyer at a lineup, but concluded that Milton did not meet the "burden to show that he did not waive his right to counsel at the lineup," and therefore failed to show that trial counsel was deficient. *State v. Milton*, No. 2012AP853–CR, 2013 WL 4417576 at *6 (Wis. Ct. App. Aug. 20, 2013). The court also determined that, even if counsel were deficient for failing to suppress the lineup evidence, Milton suffered no prejudice, given the strength of the other evidence. The Wisconsin Supreme Court denied his petition for review.

Milton then filed a timely § 2254 petition reasserting his claim that trial counsel was ineffective as to the uncounseled lineup and related identifications. A magistrate judge, presiding by consent, denied the petition on the ground that Milton did not show prejudice. This court certified an appeal.

## II. ANALYSIS

We review *de novo* a district court's denial of a petition for a writ of habeas corpus. *Dansberry v. Pfister*, 801 F.3d 863, 866 (7th Cir. 2015). But the Antiterrorism and Effective Death Penalty Act of 1996 limits our review of any claim that a state court already adjudicated on the merits. *McDaniel v. Polley*, 847 F.3d 887, 893 (7th Cir. 2017); *King v. Pfister*, 834 F.3d 808, 813 (7th Cir. 2016). Here, Milton can prevail only if he shows that the state court's decision was contrary to or an unreasonable application of clearly established federal law. 28 U.S.C. § 2254(d); *Harrington v. Richter*, 562 U.S. 86, 105 (2011); *Campbell v. Reardon*, 780 F.3d 752, 762 (7th Cir. 2015).

Milton argues that his trial lawyer was deficient for failing to move to exclude the uncounseled police lineup. He contends that—absent a valid waiver—*Gilbert v. California*, 388 U.S. 263, 272 (1967), flatly prohibits testimony about any lineup conducted without counsel, such that counsel necessarily would have prevailed in moving to suppress the lineup evidence. Therefore, Milton reasons, counsel's failure to file such a motion "fell below an objective standard of reasonableness." *Strickland v. Washington*, 466 U.S. 668, 687–88 (1984). The State disagrees, arguing that it was Milton's burden to establish that he had not waived his right to counsel, and that he did not meet that burden.

But we need not reach the waiver issue. Even if Milton could prove that counsel performed deficiently, the state appellate court acted reasonably in deciding that this deficient performance did not prejudice him. *Strickland*, 466 U.S. at 687.

To establish prejudice, Milton must show a "reasonable likelihood" of an acquittal absent counsel's errors. *Blackmon v.*

*Williams*, 823 F.3d 1088, 1107 (7th Cir. 2016). And, because the Wisconsin Court of Appeals rejected Milton's claim of prejudice on the merits, its analysis is subject to AEDPA deference. *See Wiggins v. Smith*, 539 U.S. 510, 534 (2003).

The Wisconsin court found that, because James knew Milton from the neighborhood and had identified him in the untainted photo array, his in-court identification was based on a source other than the lineup and would have been admissible even if the lineup were suppressed. *See United States v. Wade*, 388 U.S. 218, 240 (1967). Whether Howard's in-court identification would have been suppressed was less clear. But the court decided that, even without Howard's testimony, an acquittal was not reasonably probable. The totality of the evidence—James's identification of Milton, a detective's testimony that Cedric Jones had also identified Milton in a photo array, the .45 caliber bullet casings, and the black and white bandana found in Milton's bedroom—was too great to meet that threshold.

In theory, prosecutors could have had a harder time persuading jurors of Milton's involvement in the fight and shooting if the lineup identifications by Howard and James were excluded. But, considering the evidence as a whole, the decision of the Wisconsin Court of Appeals that Milton did not suffer *Strickland* prejudice was reasonable. The two admissible eyewitness identifications by James and (indirectly) Jones were substantial evidence against Milton. *See Morales v. Johnson*, 659 F.3d 588, 602 (7th Cir. 2011) (holding state court did not unreasonably apply *Strickland* in concluding that petitioner was not prejudiced by counsel's failure to impeach an eyewitness and call an alibi witness, given two other eyewitness identifications). Although James's narrative appears to

have varied at times and thus was not ironclad, the jury was aware of these variations and still voted to convict. Under § 2254(d), it lay within the bounds of reason to conclude that the evidence against Milton was so compelling that the probability of an acquittal, if the lineup were suppressed, was negligible.

### III. CONCLUSION

For the foregoing reasons, the district court's denial of Milton's petition for a writ of habeas corpus is AFFIRMED.