NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 15-3727
_____

GARY LEE JACKSON,
                                    Appellant

v.

SUPERINTENDENT GRATERFORD SCI;
DISTRICT ATTORNEY MONTGOMERY COUNTY;
ATTORNEY GENERAL PENNSYLVANIA


_____


On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil No. 2-13-cv-07095)
District Judge: Honorable Jeffrey L. Schmehl
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
April 4, 2017

Before: CHAGARES, SCIRICA, and FISHER, <u>Circuit Judges</u>

(Filed: January 19, 2018)


_____

OPINION[*]
_____


_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

**SCIRICA**, *Circuit Judge*

Gary Lee Jackson filed a Petition for Writ of Habeas Corpus challenging his state court robbery convictions. 28 U.S.C. § 2254. The District Court denied relief, and Jackson appeals. We will affirm.

**I.**

On March 17, 2008, Jackson entered an open guilty plea to five counts of first-degree robbery arising out of bank robberies he committed in Montgomery County, Pennsylvania on September 9, September 15, October 13, October 20, and November 5, 2007. In each case, Jackson obtained money from the teller after displaying a demand note indicating that he was armed. Before the plea hearing, Jackson completed a sworn guilty plea questionnaire in which he acknowledged he understood, *inter alia*, the maximum possible sentence and that the judge would not be bound by any agreement between his defense counsel and the District Attorney. At the hearing, he testified under oath he was acting of his own free will and no promises or threats by his attorney induced his guilty plea. He acknowledged each robbery count carried a possible sentence of 10 to 20 years, and that the sentencing judge could impose an aggregate sentence of up to 50 to 100 years' imprisonment. Because Jackson was eligible for a 25-year mandatory minimum under Pennsylvania's three-strikes law, however, his actual sentencing exposure was significantly higher: a possible sentence of 25 to 50 years per count, with an aggregate sentence of up to 125 to 250 years. *See* 42 Pa. Cons. Stat. §§ 9714, 9756. The judge explained that the sentence ultimately imposed would be up to him alone:

> So at this point, I don't know what the sentence will be, no one could have predicted what the sentence will be. Counsel may have given you some ideas of what he thinks might happen, but the bottom line is, the sentence will be entirely up to me . . . .

J.A. 237-238. Jackson testified he understood this. The judge then made clear that, absent exceptional circumstances, he would "permit [Jackson] to withdraw the plea and [Jackson would] be back in the same position [he] w[as] in before the plea was offered." J.A. 239. He explained that "[b]efore sentence is imposed, it's a fairly liberal test in considering a withdrawal of the guilty plea." J.A. 240. Jackson again testified he understood.

A presentence investigation revealed Jackson had a criminal history spanning some 26 years, including seven prior bank robbery convictions. Based on his criminal history, the standard state guidelines sentencing range for each count was 10 to 20 years' imprisonment, the same exposure Jackson acknowledged in his plea colloquy.

On June 6, 2008—four days before sentencing—the Assistant District Attorney notified the court he intended to invoke Pennsylvania's three-strikes enhancement, which, as noted, would have subjected Jackson to a mandatory sentence of at least 25 years per count and a potential 250-year maximum sentence. Jackson apparently learned of the three-strikes enhancement on June 10, when he appeared for sentencing. Although he expressed second thoughts about his guilty plea, Jackson decided not to withdraw his plea and elected to proceed to sentencing. The Assistant District Attorney then withdrew the three-strikes notice during the sentencing hearing.

3

On appeal, Jackson alleges he entered sentencing expecting concurrent sentences of 7 to 14 years based on defense counsel's representations earlier in the plea process. He also alleges he knew nothing of the potential three-strikes enhancement and mandatory minimum when he pled guilty. According to Jackson, when the judge gave him the option of withdrawing his plea before sentencing, defense counsel informed Jackson the Commonwealth would seek a 25-year minimum under Pennsylvania's three-strikes law if he went to trial, but would withdraw its invocation of the three-strikes sentence if he maintained his plea and proceeded to sentencing that day. Jackson chose not to withdraw his plea and to proceed to sentencing.

At sentencing, the District Attorney argued that concurrent sentences of 10 to 20 years for all five counts would be too lenient given Jackson's extensive criminal history and the seriousness of his crimes. After Jackson's allocution, the judge sentenced him to an aggregate sentence of 20 to 40 years' imprisonment.

Shortly thereafter, Jackson wrote to the judge claiming he had pled guilty based on his belief that his defense counsel and the District Attorney had discussed a more lenient sentence. The court treated his letter as a motion for reconsideration of sentence, which it denied. Aided by new counsel, Jackson took a direct appeal, but was unsuccessful.

Jackson then sought relief under Pennsylvania's Post Conviction Relief Act, 42 Pa. C.S. §§ 9541–9546, asserting, *inter alia*, that his defense counsel was ineffective and his plea was invalid. The PCRA court denied his petition, and the Superior Court affirmed. Addressing Jackson's claim that his defense counsel misrepresented his likely sentence, the Superior Court concluded Jackson's claim failed because, at the plea

4

colloquy, he acknowledged his sentencing exposure was 50 to 100 years and testified that no threats or promises induced his guilty plea. The Superior Court also rejected Jackson's claim that his defense counsel was ineffective for not raising the specter of a three-strikes enhancement because that penalty was only "possible" and was not ultimately imposed. The Pennsylvania Supreme Court denied allocatur.

Jackson filed a Petition for Writ of Habeas Corpus in the United States District Court for the Eastern District of Pennsylvania. 28 U.S.C. § 2254. He alleged "his plea counsel was ineffective for erroneously advising him that he would receive a shorter sentence than he received and for failing to investigate the sentencing guidelines that could be used against him resulting in an involuntary plea." J.A. 16. He also alleged his "plea was involuntary because the Commonwealth failed to inform him of the applicability of a mandatory minimum sentence." *Id.* The District Court referred the case to a Magistrate Judge, who recommended the Petition be denied. The District Court adopted the Magistrate Judge's recommendation and denied the Petition.

Jackson sought a Certificate of Appealability, which we granted respecting two issues: whether Jackson was denied effective assistance of counsel through either (1) misrepresentations that induced him into an invalid plea, or (2) counsel's failure to inform him of a possible mandatory minimum, which was later used to coerce him into entering an invalid plea.

## II.

Our review of Jackson's habeas Petition falls under the Antiterrorism and Effective Death Penalty Act of 1996, 28 U.S.C. § 2254(d), and we exercise plenary

5

review over the District Court's order denying that Petition, *see Simmons v. Beard*, 590 F.3d 223, 231 (3d Cir. 2009).[1]  Under AEDPA's deferential standard of review, if a claim is "adjudicated on the merits in State court proceedings," we can grant relief only if the adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented" in state court.  28 U.S.C. § 2254(d).

A state court's decision is contrary to clearly established federal law if it "'applies a rule that contradicts the governing law set forth' in Supreme Court precedent, or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different' from that reached by the Supreme Court."  *Eley v. Erickson*, 712 F.3d 837, 846 (3d Cir. 2013) (quoting *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000) (alteration in original)).  A state court's decision unreasonably applies clearly established federal law if "there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme] Court's precedents."  *Harrington v. Richter*, 562 U.S. 86, 102 (2011).

Jackson argues his defense counsel's errors denied him the right to effective assistance of counsel guaranteed by the Sixth Amendment.  To prevail on a Sixth Amendment ineffective assistance claim, a habeas petitioner must show both that counsel was constitutionally ineffective and that he suffered prejudice as a result.  *See Strickland*

---

[1] The District Court had jurisdiction over Jackson's petition under 28 U.S.C. § 2254.  We exercise jurisdiction under 28 U.S.C. §§ 1291 and 2253.

6

*v. Washington*, 466 U.S. 668, 687 (1984). To be constitutionally ineffective, a counsel's performance must have fallen "below an objective standard of reasonableness." *Albrecht v. Horn*, 485 F.3d 103, 127 (3d Cir. 2007) (citing *Strickland*, 466 U.S. at 689–92). "[T]o show prejudice, the petitioner must show that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Id.* (quoting *Strickland*, 466 U.S. at 694).

A petitioner claiming ineffective assistance of plea counsel must demonstrate "a reasonable probability that, but for counsel's errors, [the petitioner] would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). In conducting this analysis, "predictions of the outcome at a possible trial, where necessary, should be made objectively, without regard for the 'idiosyncrasies of the particular decisionmaker,'" *id.* at 59–60 (quoting *Strickland*, 466 U.S. at 695), and "a petitioner must convince the court that [an alternative plea decision] would have been rational under the circumstances," *Padilla v. Kentucky*, 559 U.S. 356, 372 (2010).

### III.

As noted, we granted review with regard to whether Jackson was denied effective assistance of counsel in either of two ways: (1) whether counsel induced Jackson into an unknowing and involuntary plea by misrepresenting the sentence he would receive upon pleading guilty; and (2) whether counsel was ineffective for failing to raise the possibility of a mandatory minimum, and later using that risk to coerce Jackson into an unknowing or involuntary plea.

7

**A.**

We begin with Jackson's allegation that his defense counsel was constitutionally ineffective by misrepresenting that the District Attorney had agreed to a relatively lenient sentence. The Superior Court reasonably concluded Jackson's own statements during his plea colloquy undermined that claim. As the Superior Court observed:

> During [Jackson's] guilty plea colloquy, [he] specifically testified that he understood his rights, the nature and elements of the charges that were filed against him, and the consequences of his plea. [Jackson] also testified that he was voluntarily pleading guilty to the charges, that he was pleading guilty because he committed the crimes, and that it was in his best interest to plead guilty. Further, throughout the colloquy, [he] consistently testified that he was aware of the fact that he was entering an open guilty plea, that he could receive a sentence of up to 50 to 100 years in prison, and that his actual sentence could very well be "considerable."

J.A. 424–425 (Superior Court Opinion) (citations omitted). Indeed, Jackson affirmed he was not pleading guilty based on any promises or threats from defense counsel. He acknowledged his sentence was unpredictable and would be up to the sentencing judge alone.

Jackson points to his correspondence with his defense counsel, claiming it shows he had been promised a more lenient sentence. That correspondence demonstrates only Jackson *hoped* for a more lenient sentence, not that the Commonwealth had agreed to seek a sentence of no more than 7–14 years' imprisonment, or that a particular sentencing range had been guaranteed. On the contrary, it demonstrates he knew his sentence was uncertain and recognized it could be significantly lengthy.[2]

---

[2] For example, following Jackson's interview with the sentencing investigator, he sent a letter dated June 2, 2008, reporting that the investigator "painted a rather bleak picture,"

8

Whether or not defense counsel, at some early point, created an expectation that the District Attorney would recommend a lenient sentence, Jackson acknowledged in his plea questionnaire, plea colloquy, and letters that the judge could impose an aggregate sentence as long as 50 to 100 years, that the sentence imposed would be entirely up to the judge, and that no one could predict what that sentence would be. The Superior Court reasonably concluded that Jackson's own testimony undermined his claim that his plea was induced by counsel's misrepresentations. That conclusion was not contrary to, or an unreasonable application of, Supreme Court precedent.[3]

---

J.A. 443, and acknowledging that his sentence was ultimately up to the sentencing judge, *see id.* ("I know that it is within Judge Nicholas'[s] power to depart from whatever guidelines I may fall within and I will respectfully refer to that in my letter to him."). Jackson's letter dated March 24, 2008, indicates he hoped for a relatively lenient sentence, but knew his sentence was uncertain. *See* J.A. 430 ("I hope you can secure a 4 year minimum sentence(s) for me."); *id.* ("It is my sincere hope that you can petition the D.A. for a more treatment oriented sentence as opposed to a lengthy and more severe incarceration."); *id.* ("I have some scenarios that I would like for you to consider presenting to the D.A. . . . , and I hope you agree that it will [not] do any harm to run these by the D.A. . . . ."); J.A. 431 ("Please let me know what you think about these and any chance of securing these terms for sentencing?"). His letter sent in mid-April reveals an understanding the District Attorney had not yet agreed to seek a certain sentence. *See* J.A. 436 ("I hope that this [reference from my Union President] can be utilized to help sway the District Attorney into accepting the aforementioned sentencing scenario [of a sentence between 48 and 118 months]."). Jackson may have hoped a relatively lenient sentence was possible, but his letters reflect an understanding his sentence was still undetermined and a recognition his sentence could be harsh.

[3] In the alternative, Jackson urges us to remand this matter for an evidentiary hearing. In a habeas proceeding, we review a district court's decision whether to hold an evidentiary hearing for abuse of discretion. *See Morris v. Beard*, 633 F.3d 185, 193 (3d Cir. 2011). Because we agree that Jackson's petition should be denied, the District Court acted within its sound discretion in declining to hold an evidentiary hearing. *See Schriro v. Landrigan*, 550 U.S. 465, 474 (2007) ("[I]f the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing.").

**B.**

We turn next to Jackson's allegation that his defense counsel was constitutionally ineffective by failing to inform him he could face a mandatory minimum sentence, and then later using that risk to coerce him into an unknowing or involuntary plea. The Superior Court rejected this claim, reasoning that "counsel could not have been ineffective for 'failing to advise' Appellant of the 'possible' application of the mandatory minimum sentence." J.A. 428. Assuming for the purposes of this appeal that the Superior Court unreasonably applied clearly established Supreme Court precedent, we will review this claim de novo. *See Brady v. United States*, 397 U.S. 742, 748 (1970) ("Waivers of constitutional rights not only must be voluntary but must be knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences."); *Boykin v. Alabama*, 395 U.S. 238, 244 n.7 (1969) (advising trial courts to ensure "the defendant understands . . . the permissible range of sentences"); *Jamison v. Klem*, 544 F.3d 266, 274-77 (3d Cir. 2008) (holding *Boykin* and its progeny clearly established requirement that a defendant be informed of "permissible range of sentences," including mandatory minimum, before pleading guilty); *Vickers v. Superintendent Graterford SCI*, 858 F.3d 841, 850 (2017) ("This conclusion, however, does not end our inquiry or require that the Great Writ be granted. Instead, . . . it merely forfeits the AEDPA deference to which the state court's denial of relief would otherwise be entitled and dictates that we review [the petitioner's] *Strickland* claim de novo.").

The state court record makes clear that, during the guilty plea colloquy, no one informed Jackson of a potential mandatory minimum sentence and defense counsel

10

understated Jackson's maximum possible sentence. Citing *Hill*, Jackson asserts he "would not have pled guilty if trial counsel had informed him of the potential for a recidivist sentencing enhancement." Appellant's Br. at 29. Even assuming Jackson's plea was not knowing, voluntary, and intelligent when entered, Jackson has not carried his burden of showing prejudice. *See Padilla*, 559 U.S. at 372 ("[A] petitioner must convince the court that [an alternative plea decision] would have been rational under the circumstances."). Significantly, the trial judge cured any deficiency by affording Jackson the opportunity to withdraw his plea after he learned the Commonwealth was seeking the mandatory minimum. *Cf. Jamison*, 544 F.3d at 279 (holding unknowing plea not cured by the defendant's failure to withdraw plea where the judge did not afford him adequate opportunity to withdraw plea). In light of the judge's offer of the opportunity to withdraw his plea, Jackson's decision to maintain his plea and avoid facing the mandatory minimum penalty at trial belies his bald assertion that he would not have pled guilty had he known of the potential for a three-strikes enhancement. Accordingly, he cannot make out the prejudice required to prevail on this claim.

Jackson's claim that his defense counsel used the Commonwealth's invocation of the three-strikes sentence to coerce him not to withdraw his guilty plea is likewise without merit. Indeed, defense counsel would have been ineffective had he *not* informed Jackson the Commonwealth was seeking a three-strikes sentence. Moreover, the Commonwealth's offer to withdraw the three-strikes sentence if Jackson maintained his plea was permissible plea negotiation, not coercion. *See Bordenkircher v. Hayes*, 434 U.S. 357, 364 (1978) ("While confronting a defendant with the risk of more severe

11

punishment clearly may have a discouraging effect on the defendant's assertion of his trial rights, the imposition of these difficult choices is an inevitable—and permissible—attribute of any legitimate system which tolerates and encourages the negotiation of pleas." (internal quotation marks, alteration, and citation omitted)).  Defense counsel did not impermissibly coerce Jackson by conveying this legitimate offer from the Commonwealth.

## IV.

For the foregoing reasons, we will affirm the District Court's order denying Jackson's Petition for Writ of Habeas Corpus.